UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MELISSA ANN PENSIERO,

    Plaintiff,

        v.                                Civ. No. 3:19-cv-00279 (WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

    Defendant.

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Melissa Ann Pensiero's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("the Commissioner"), or in the alternative, an order

---

[1]     The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.
[2]     Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

remanding this case for a rehearing. [Doc. #10]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. #17]. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion to reverse/remand and denies the Commissioner's motion to affirm.

## **LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe

impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920.[3] The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the

---

[3] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

3

Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

## I. BACKGROUND

### A. Facts

Plaintiff filed her DIB application on March 31, 2016, alleging an onset of disability as of December 31, 2011. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On March 2, 2018, a hearing was held before Administrative Law Judge Michael McKenna ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE"), testified at the hearing. On March 28, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On January 30, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff was forty-three years old on the date last insured. (R. 21). She completed high school and has past employment as a Pharmacy Technician. (R. 21). Plaintiff's complete medical history is set forth in the Statement of Facts filed by the parties. [Doc. ##10-1; 17-1]. The Court adopts these statements and incorporates them by reference herein.

### B. The ALJ's Decision

The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity during her period from her alleged onset date of December 31, 2011, through her date last insured of December 31, 2015. (R. 12). At Step Two, the ALJ found Plaintiff had the following

4

severe impairments: mitral valve disorder and complex regional pain syndrome in her right upper extremity. (R. 12). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 15). Next, the ALJ determined Plaintiff retains the following residual functional capacity[4]:

> to perform light work as defined in 20 C.F.R. 4041567(b) except could occasionally lift and/or carry up to twenty pounds with her left upper extremity and could frequently lift and carry ten pounds. Additionally, she could only perform fine and gross manipulation occasionally with her right upper extremity, sit, stand and walk a total of six hours each throughout an eight-hour day, occasionally climb ladders, ropes and scaffolding and crawl.

(R. 15).

At Step Four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work. (R. 21). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 21-22). Accordingly, the ALJ determined that Plaintiff was not disabled from December 31, 2011, the alleged onset date, through December 31, 2015, the date last insured. (R. 22).

## II. DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

### a. Development of the Record

Plaintiff argues that the ALJ's ruling should be reversed or remanded for a number of reasons relating to a failure to develop the record and obtain medical source statements from *any* of her

---

[4] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§404.1545(a)(1); 416.945(a)(1).

treating physicians including treating cardiologist Dr. Steven Borer, orthopedic surgeon Dr. Andrew Gabow, primary care physician Dr. Vijai Muthukrishnan, and pain management specialist Dr. Jonathan Kost. [Doc. #10-2 at 1-11 ]. For the reasons that follow, the Court finds that the ALJ did not fulfill his duty to develop the record and that remand is warranted to obtain medical source statements from treating physicians and clinicians.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient." *Halle v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's

6

medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not a case where plaintiff suffers relatively little physical impairment such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much by designating as "severe" plaintiff's mitral valve disorder and complex regional pain syndrome, and assessing an RFC with extensive and detailed limitations. (R. 12, 15-21).

Here, the ALJ assigned "great weight" to the physical RFC assessments of State agency physicians Dr. Virginia Rittner and Dr. Robert Weisberg, none of whom treated or examined Ms. Pensiero. (R. 19, *see* R. 71-73; 85-87). The ALJ's reliance on the assessment by the State Agency physicians is problematic because there is no medical opinion from a treating physician and/or specialist addressing the functional limitations that flow from Plaintiff's physical impairments to support the ALJ's physical RFC findings.

With regard to Plaintiff's Complex Regional Pain Syndrome, Ms. Pensiero began treatment with Dr. Gabow in June 2010 for injuries sustained to her right upper extremity in a 2008 work related incident. (R. 415). At the time she initiated treatment with Dr. Gabow in June 2010, she had undergone surgery on her right hand and was experiencing ongoing pain. (R. 18, 415). Plaintiff underwent dorsal compartment release surgery in July 2010. (R. 414). The treatment records reflect that Plaintiff's pain was not relieved by the surgery or physical therapy. (R. 413-14). In October 2010, another surgery was performed by Dr. Gabow excising a neuroma along with a transection of the nerve and burying the proximal end into a muscle. (R. 18, 403-04).

Plaintiff continued to treat with Dr. Gabow for pain reporting minimal improvement from the surgeries. (R. 413 (10/14/10); R. 412 (11/4/10, 11/19/10, 12/14/10); R. 411 (1/11/11, 2/11/11,

2/25/11); R. 409 (4/5/11-noting that Plaintiff "is still having a fair amount of pain. She does need pain medication for this…. She has been in therapy with slight gains. *She needs to continue this as she may be developing RSD [Reflex Sympathetic Dystrophy, now known as Complex Regional Pain Syndrome or CRPS].*"); (R. 407 (5/3/11-"This is probably an RSD and may be very difficult to break."), R. 407 (6/23/11-reporting pain and stating "[n]othing has really changed with regard to her physical exam."); R. 407 (7/26/11-same); R. 405 (8/30/11-same); (R. 402 (1/17/12- Dr. Gabow stated "I think this is a classic case of reflex sympathetic dystrophy. There has been no improvement in over a year."). Dr. Gabow treated Plaintiff from June 2010 through July 31, 2017 (R. 415, 887), and throughout this period of time the doctor reported no change and continued prescribing opioid medication, "the only thing that relieves her pain." (R. 552*; see e.g.* R. 399, 401, 402, 407). In a letter assessing Plaintiff's physical impairments for a Workers' Compensation claim, dated July 26, 2012, Dr. Gabow stated, in part, "Melissa Pensiero will most likely require pain management for her chronic pain. This would entail long-term use of narcotics that I have been prescribing. This may even [be] life-long … I do not think that any other operative intervention could be recommended." (R. 397). The doctor consistently found that Plaintiff was <u>unable</u> to return to work. (R. 398, 399, 401, 402, 407, 408, 409, 411. 413).

Here, Dr. Gabow's treatment records contain raw medical data and/or bare medical findings such as medication notes, diagnosis, examination findings, Plaintiff's reports of pain, and assessments for her Workers' Compensation claim, but do not access Plaintiff's functional abilities to do work related activities. "[W]hen the treatment notes and test results from the claimant's treating physicians do not assess how the claimant's symptoms limit [her] functional capacities, remand is warranted." *Angelico v. Colvin,* Civ. No. 3:15CV00831(SRU)(JGM), ECF No.17 at 33 (D. Conn. Feb. 8, 2017)(alterations, citations and quotation marks omitted).

8

Despite the lengthy and intensive nature of the treatment, the Administrative Record before this Court does not contain *any* medical source statement from Dr. Gabow, as well as other treating physicians and/or clinicians including Dr. Jonathan Kost and PA Beth Garrison who provided pain management treatment on May 2016, March 2017 and July 2017, primary care physician Dr. Muthukrishnan, who treated Plaintiff from 2015 through 2018, and cardiologist Dr. Borer who treated Plaintiff from 2011 through 2017. These specialists developed a treating relationship with Plaintiff and had ample opportunity to observe and examine her. The Court finds that this case should be remanded for further development of the record from plaintiff's treating physicians and/or clinician to obtain medical source opinions.

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart*, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* No. 09–CV–0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

*House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013).

### b. Evaluation of Complex Regional Pain Syndrome

The Court also finds that this case should be remanded to evaluate Plaintiff's CRPS pursuant to SSR 03-02p. CRPS is a "chronic pain syndrome most often resulting from trauma to a single extremity." Social Security Ruling ("SSR")03-02p, "Titles II and XVI: Evaluation Cases Involving Reflex Sympathetic Dystrophy/Complex Regional Pain Syndrome. 68 FR 599971-01, at *59972, 2003 WL 22380904 (S.S.A. Oct. 20, 2003). "It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time." *Id.*

Plaintiff argues that the ALJ failed to properly follow and apply SSR 03-02p, which expressly instructs an ALJ to pay particular attention to

> Opinions from an individual's medical sources, especially treating sources, concerning the effect(s) of RSDS/CRPS on the individual's ability to function in a sustained manner in performing work activities, or in performing activities of daily living, are important in enabling adjudicators to draw conclusions about the severity of the impairment(s) and the individual's RFC. In this regard, any information a medical source is able to provide contrasting the individual's medical condition(s) and functional capacities since the alleged onset of RSDS/CRPS with the individual's status prior to the onset of RSDS/CRPS is helpful to the adjudicator in evaluating the individual's impairment(s) and the resulting functional consequences.
>
> In cases involving RSDS/CRPS, third-party information, including evidence from medical practitioners who have provided services to the individual, and who may or may not be "acceptable medical sources," is often critical in deciding the individual's credibility. Information other than an individual's allegations and reports from the individual's treating sources helps to assess an individual's ability to function on a day-to-day basis and helps to depict the individual's capacities over a period of time, thus serving to establish a longitudinal picture of the individual's status.

SSR 03-02p, 68 FR 59971-01, at *55975, 2003 WL 22380904. The Court agrees. Although the ALJ found that Plaintiff suffered from CRPS and that it was a severe impairment, he did not cite SSR 03-02p or give any indication that he was aware of the ruling or its requirements. Moreover, there are no opinions from <u>any</u> of Plaintiff's treating physicians and/or specialists addressing Plaintiff's ability to function in a work setting. *See Roe v. Colvin*, No. 1:13-CV-1065 (GLS), 2015 WL 729684, at *4 (N.D.N.Y. Feb. 19, 2015)(ALJ properly applied SSR 03-02p where he relied on medical records that "included the impact of CRPS, including pain, on [the plaintiff's] ability to work"); *Cooley v. Colvin*, 12-CV-1284 (NAM/VEB), 2013 WL 12224205, at *5 (N.D.N.Y. Oct. 15, 2013) ("remand for consideration of Plaintiff's CRPS in accordance with SSR 03-02p."); *Smith v. Berryhill*, No. 1:15-CV-00795-MAT, 2018 WL 936381, at *3 (W.D.N.Y. Feb. 18, 2018)(finding ALJ did not err in the application of SSR 03-02p because he properly considered all the treatment records and opinion of claimant's treating physician "on at least three occasions that she was capable of working with restrictions.").

Accordingly, the Court finds that additional administrative proceedings are required. On remand, the ALJ should develop the record as necessary to obtain opinions as to Plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation and thoroughly explain his findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record ....") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Pensiero's] RFC." *Id.*

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein. *See Moreau v. Berryhill*, Civil Action No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018)("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own."); *Snedeker v. Colvin,* Civil Action No. 3:13-cv-970 (GLS/ESH), 2015 WL 1126598, at *8 (N.D.N.Y. Mar. 12, 2015)(finding it is pointless to address Snedeker's remaining points of error until his low back impairment is factored into a residual functional capacity finding. "The outcome of this case in its present posture will not change whether or not these additional points are meritorious or baseless. Addressing them administratively on remand, however, may avoid a second costly action for judicial review.").

### III.  CONCLUSION

For the reasons stated, Plaintiff's Motion to Reverse the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing **[Doc. #10]** is **GRANTED**. Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #17]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.

SO ORDERED, this 25th day of November, 2019, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge